**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**ONE (1) 1987 MERCURY MARQUIS**
**and $4,789.00 in United States**
**Currency, Defendant,**

**Appeal of Robert H. MICK, Intervenor.**

**No. 89–3902.**

United States Court of Appeals,
Sixth Circuit.

Argued May 10, 1990.
Decided July 23, 1990.

Kathleen A. Sutula, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Kenneth J. Cardinal (argued), Sebring, Ohio, for intervenor.

Before KENNEDY and RYAN, Circuit Judges, and COOK, Chief District Judge.[1]

KENNEDY, Circuit Judge.

This in rem forfeiture action was initiated by the government against a 1987 Mercury Marquis and $4,789.00 in cash. The government alleges that both items were used or intended to be used in violation of the internal revenue laws regarding wagering. Robert Mick, who intervened to claim an ownership interest in the defendant property, and the government both filed motions for summary judgment. The District Court granted the government's motion. We AFFIRM.

On November 23, 1987, members of the Canton and Sebring Police Departments and two Special Agents of the Internal Revenue Service's Criminal Investigation Division (IRS) detained and searched Robert Mick and his car pursuant to a search warrant. The search revealed numerous articles in the car, including line score sheets, computerized carryover sheets, parlay sheets, parlay stubs, bank receipts, and $2,648.00 in cash. In Mick's pants pocket, the investigators found $2,141.00.

Based on this evidence, the State charged Mick with bookmaking and illegal gambling. In the ensuing criminal proceedings, however, the state trial court determined that the search warrant had been issued without probable cause. The court found that the supporting affidavit primarily cited evidence and observations derived from several searches of a garbage dumpster located behind I & J Printing, a print shop suspected of printing parlay sheets for illegal sports gambling. Because those dumpster searches were conducted without a warrant, the court disregarded the majority of the affidavit's allegations and concluded that the remaining sections did not establish probable cause for the issuance of a search warrant. Accordingly, the court dismissed the search warrant and suppressed all of the evidence obtained from Mick and his car. Shortly thereafter, the prosecutor dismissed the state charges against Mick for lack of evidence.

Meanwhile, the IRS agents seized Mick's car as forfeited to the government on the day of the search, November 23, 1987. On February 2, 1988, the IRS adopted the police seizure and took possession of the money. Finally, on October 19, 1988, the government filed a Complaint in Forfeiture and thus commenced this action.

The District Court found that all of the government's evidence obtained from the dismissed search warrant was inadmissible in the forfeiture action. The court noted, however, that "[i]t is settled that where property declared by a federal statute to be forfeited because used in violation of federal law is seized by one having no authority to do so, the United States may adopt the seizure with the same effect as if it had originally been made by one duly authorized." *United States v. One Ford Coupe Automobile*, 272 U.S. 321, 325, 47 S.Ct. 154, 155, 71 L.Ed. 279 (1926). After noting that "the forfeiture can proceed if the government can show probable cause with *untainted* evidence," *United States v. United States Currency $31,828*, 760 F.2d 228, 230 (8th Cir.1985) (emphasis in original), the court found that the government's untainted evidence established probable cause to maintain the forfeiture.

The District Court stated that the government's untainted evidence included the affidavits of two individuals who accepted parlay sheets from Mick, the transcripts of phone conversations between Mick and an undercover officer of the Can-

---

**1.** The Honorable Julian Abele Cook, Jr., Chief United States District Judge for the Eastern District of Michigan, sitting by designation.

ton Police Department, and the transcripts of surveillance work on the case. The court noted:

The first affidavit contains the testimony of one George Wilson, who states that for two or three years, he received approximately five to six hundred parlays from Mick each week during the football season, which he would distribute to five or six other people. Wilson also states that he gave Mick about $600 to $700 in bets each week, that Mick would provide payoffs for the bets the following week, and that Mick paid him for this work. Finally Wilson states that Mick usually put the parlay stubs and the money in his pockets, and usually drove "a white Mercury" to Wilson's house. The other affidavit contains the testimony of Paul Vizzuso, who states that Mick delivered parlays to him on Monday night for ¬pproximately three to four years. Vizzuso says that the parlays were for his personal use, and that Mick drove a white Ford.

The District Court found that the affidavits established probable cause to maintain a forfeiture.

■ The intervenor, Robert Mick, argues that the District Court erred in granting the government's motion for summary judgment because Mick had asserted his fourth and fifth amendment rights. Mick, relying on *United States v. United States Coin and Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), argues that the Supreme Court has held that the government may not conduct forfeiture proceedings where one asserts fifth amendment privileges. *United States Coin and Currency* extended the fifth amendment privilege against self-incrimination to in rem forfeiture proceedings. The Court's rationale was that although forfeitures are civil in form, they are criminal in nature for fifth amendment purposes. *Id.* at 718, 91 S.Ct. at 1043.

As the government notes, however, Congress responded to the cases upon which *United States Coin and Currency* relied by amending the statutory provisions that were found to have offended the fifth

amendment privilege. In 1968, Congress repealed 26 U.S.C. § 6107 so that IRS agents were no longer required to provide wagering tax information to local law enforcement agencies. Congress also amended 26 U.S.C. § 6806 in 1968 by deleting the requirement that registrants conspicuously display their tax stamp or produce it on demand. Furthermore, in 1974 Congress responded to *United States Coin and Currency* by enacting 26 U.S.C. § 4424, which forbids Treasury Department officials and employees from disclosing information taken from registrations under the wagering and coin-operated gaming device statutes. This Court, like the Fifth and Second Circuits, has found that the amendments are constitutionally valid in the face of a fifth amendment challenge. *United States v. Merlo*, 704 F.2d 331, 332 (6th Cir.1983); *United States v. Jeffers*, 621 F.2d 221, 225–26 (5th Cir.1980) ("[T]he 1974 revisions and the concomitant change in Treasury Department practices have eliminated the 'real and appreciable' hazards of self-incrimination that existed under the prior law since Section 4244 makes the tax disclosures unavailable to law enforcement authorities."); *United States v. Sahadi*, 555 F.2d 23 (2d Cir.1977). Further, Mick has not demonstrated how the forfeiture would affect his fifth amendment rights. Thus his fifth amendment challenge is not a defense to the government's forfeiture action.

■ Mick also argues that because the District Court excluded the property as evidence in the forfeiture proceeding, nothing remained actionable before the court. The District Court, however, quoting *United States Currency $31,828*, 760 F.2d 228, stated "[T]he forfeiture can proceed if the government can show probable cause with *untainted* evidence." *Id.* at 230 (emphasis in original). *See also United States v. One 1978 Mercedes Benz, Four–Door Sedan*, 711 F.2d 1297, 1303 (5th Cir.1983); *United States v. $22,287, United States Currency*, 709 F.2d 442, 446 (6th Cir.1983); *United States v. One 1975 Pontiac Lemans*, 621 F.2d 444, 451 (1st Cir.1980); *United States v. One (1) 1971 Harley–Davidson Motorcycle*, 508 F.2d 351, 352 (9th Cir.1974). This

holding by the District Court is not inconsistent with the Supreme Court case of *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), as Mick contends. *One 1958 Plymouth Sedan* merely held that evidence derived from an illegal search is inadmissible in a forfeiture proceeding. *Id.* at 702, 85 S.Ct. at 1251.

■ Mick argues that the affidavits relied upon by the District Court as evidence of probable cause cannot be used to establish probable cause because they were made eight months after the seizure occurred. Although the affidavits were written after the seizure, they were used to demonstrate that probable cause to maintain a forfeiture existed at the time of the seizure. Therefore we find that the District Court did not err in finding that the government, through the use of untainted evidence, has shown that probable cause to maintain a forfeiture existed. The affidavits, together with police surveillance, were sufficient to establish probable cause for the forfeiture. Thus we agree with the District Court that there is no genuine issue of material fact and that the United States is entitled to judgment as a matter of law.

Accordingly, we AFFIRM the judgment of the District Court.