UNITED STATES of America, Plaintiff,

v.

A LEASEHOLD INTEREST IN PROP-
ERTY LOCATED AT 850 S. MAPLE,
ANN ARBOR, WASHTENAW COUN-
TY, MICHIGAN.

Civ. A. No. 90–CV–71173.

United States District Court,
E.D. Michigan.

June 30, 1990.

506

Julie Kunce Field, Mark D. Mitshkun, Paul D. Reingold, Nicholas J. Rine, University of Michigan Law School, Clinical Law Program, Ann Arbor, Mich., for plaintiff.

Stephen J. Markman, U.S. Atty., John C. Engstrom, Asst. U.S. Atty., Detroit, Mich., for defendant.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On April 23, 1990, the United States commenced this civil *in rem* forfeiture proceeding against the premises at 850 South Maple, in Ann Arbor, Michigan, which consists of a public housing unit that had been leased to Charlotte Juide by the City's Housing Commission. The Complaint alleged that the Defendant property was used to facilitate the distribution of cocaine, a controlled substance, and was therefore subject to forfeiture under 21 U.S.C. section 881(a)(7).

On April 23, 1990, a federal magistrate signed a seizure warrant which authorized the immediate removal of Juide from her premises, and the seizure of the property by the United States Government. The Government's application for the warrant was supported by an affidavit from the Ann Arbor Police Department.[1]

On April 27, 1990, the United States Marshal seized the apartment and evicted Juide and her two children. Juide and her family, who were asleep when they were awakened by the shouting of Government agents inside their apartment, were not given any prior notice of this action. Ac-

---

1. In this affidavit, the officers stated that the Ann Arbor Police Department had made controlled purchases of cocaine from the Juide apartment at 850 S. Maple Road, on two separate occasions. The first buy was made on March 8, 1990 by an unidentified informant who purchased $50.00 worth of cocaine from Paul Brewer, a visitor in the apartment. The second transaction allegedly occurred on April 5, 1990 when an unidentified police informant entered the premises and bought $50.00 worth of cocaine from an unidentified seller.

cording to Juide, one agent came into her bedroom with a gun drawn and pointed directly at her head. She was told to leave her apartment immediately. Juide also claims that when she sought to use the toilet prior to her eviction, an agent approved after an initial search of the bathroom and then watched her as she used the lavatory. (Juide affidavit at 2)

Juide and her children were given less than fifteen minutes in which to gather their belongings before they were removed from their apartment. An unidentified person with a video camera filmed the activities in the apartment. In addition, several members of the news media were waiting outside the apartment unit with additional cameras when Juide exited. *Id.*

The Complaint against the premises in this case is based upon Title 21 U.S.C. section 881(a)(7) which provides for the forfeiture of "real property, including any right, title and interest (including leasehold interest) in the whole of any lot or tract of land ... which is used, or intended to be used, in any manner or part, to commit or to facilitate the commission of [certain criminal] violation[s] ..." In 1984, section 511(a)(7) of the Controlled Substance Act [21 U.S.C. section 881(a)(7)] was amended to allow the United States to forfeit real property which has been used in any manner to facilitate the commission of a felony drug transaction. The Anti–Drug Abuse Act of 1988 amended section 881(a)(7) again to clarify that real property included leasehold interests.

Although there are no specific procedural rules to be followed in such civil forfeiture actions, Section 881(b) allows for the seizure of property under any one of three summary procedures. First, the Government may file a complaint in accordance with the Supplemental Rules for Certain Admiralty and Maritime Claims whereupon a court clerk can "issue a summons and warrant for the arrest of the vessel or other property without requiring a certification of exigent circumstances." Supple-

mental Rule C(3). Second, when the Government has probable cause to believe that the property is subject to civil forfeiture, it may seize the property following customs laws, pursuant to 21 U.S.C. section 881(d). Finally, the Government may request the issuance of a seizure warrant in the manner that has been prescribed by the Federal Rules of Criminal Procedure, which require an ex parte probable cause determination to be made by a judicial officer.[2] *See* Fed.R.Crim.P. 41.; *United States v. Property at 4492 Livonia Road,* 889 F.2d 1258, 1262–63 (2nd Cir.1989).

In response to the seizure of her apartment, Juide has brought a series of motions before this Court: (1) Motion to Proceed in Forma Pauperis and to Waive Bond; (2) Motion to Vacate the Seizure or for a Temporary Restraining Order; (3) Motion to Strike Portions of Complaint; (4) Motion to Dismiss; (5) Motion for Preliminary Injunction and Sanctions; (6) Motion for Protective Order; and (7) Motion for a Stay. This Court will address each of these motions individually.

### I.

As a preliminary matter, Juide filed a Motion to Proceed in Forma Pauperis and to Waive Bond. Juide states that her sole source of income is received from public assistance benefits, and, as such, she is unable to pay court costs, bonds, or any other costs that may be associated with this action. In addition, she states that there is no need for any security to be posted in this action since her leasehold interest does not have any market value, and is subject to the ownership rights of the Ann Arbor Housing Commission.

This Court will grant the motion, pursuant to 28 U.S.C. section 1915(a), and allow Juide to proceed *in forma pauperis.* Accordingly, no bond will be required to be posted by Juide in this cause.

---

**2.** In the instant case, the Government appears to have used the third option. The Government requested, and obtained, a seizure warrant from a federal magistrate, who was apparently satisfied that probable cause existed for the forfeiture.

## II.

On May 16, 1990, Juide filed a motion to vacate the seizure and arrest warrants which had been issued on April 23, 1990, or in the alternative, for the issuance of a temporary restraining order against the Government and its agents. Juide contends that the seizure warrant was improperly issued by the federal magistrate because, in the absence of demonstrated exigent circumstances, she had not been provided with notice of the pending action or an opportunity to be heard prior to the issuance of the warrant.

■ On May 22, 1990, Juide and the Government entered into a temporary occupancy agreement whereby she was allowed to regain the use of her apartment for a thirty-day period. Thus, the Government argues that the instant motion is moot since the only relief that Juide seeks is the occupancy of her apartment. This Court disagrees.

Local Rule 35 requires that, in *in rem* actions, the Court Clerk must issue a summons which directs any person having control of intangible property to show cause why it should not be placed under the control of the court. The only exception to this requirement is if the party who seeks the seizure certifies to the court prior to the contemplated action that "exigent circumstances" exist which would make such a review "impractical." The purpose of the Rule is to insure that the basic standards of due process are met before seizures occur.

However, Juide, who claims that no such certification was undertaken by the Government, submits that her removal from the apartment is a clear violation of a local rule of the court. In her judgment, this claimed failure by the Government to comply with Local Rule 35 constitutes a *per se* violation of her due process rights which makes this default actionable and independent of any other relief which she may seek.

Upon a review of the record, this Court believes that Juide's leasehold interest in the 850 Maple Road apartment could qualify as an "intangible property" interest since she does not own the dwelling, and pays for it through her government subsidy. Thus, the Court agrees with Juide that the removal efforts by the Government on April 23, 1990 arguably represent a *prima facie* violation of her right to due process. However, there appear to be three additional grounds upon which to reach the merits of Juide's motion, and reject the Government's mootness argument.

First, the occupancy agreement, which was only valid for thirty days, expired on June 18, 1990. Therefore, this issue continues to be ripe for review. Moreover, if this Court should deny Juide's pending motion to dismiss and grant her motion for a stay, this forfeiture action could continue for a prolonged period of time, thereby putting the Juide and her family in the precarious position of having to rely upon the good graces of the Government to extend the temporary occupancy agreement.

Second, where a case raises important constitutional issues which are of a public interest, it may not be involuntarily dismissed for mootness. *See Wirtz v. Glass Bottle Blowers Ass'n, Local 153*, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This exception to the general mootness rule requires that (1) an important public interest exist and (2) the case be "capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam).

These conditions apply in the instant case, in that this type of action is capable of repetition. The Government has expressed a clear policy decision to continue seizing homes and leasehold interest under 21 U.S.C. section 881(a)(7).[3] The Government has also informed this Court that it intends to enter into occupancy agreements

---

**3.** *See Ann Arbor News*, 12/3/89, Column by U.S. Attorney George Best, "Forfeiture of Property is Tough, but Necessary in Fighting Drug Outlaws." *Ann Arbor News*, 5/13/90, "Law Allow- ing Housing Evictions Part of Police Drug War Armory." *Ann Arbor News*, 5/23/90, "HUD Chief Defends Use of Assets Forfeiture Law."

in the future.[4] However, if courts refuse to rule on the due process issues that arise out of seizures and evictions which have been authorized only in ex-parte hearings because of temporary occupancy agreements, then claimants would have neither the means to challenge the constitutionality of these evictions nor any prospect of reacquiring their property as a matter of right. *See Application of Kingsley*, 802 F.2d 571, 580 (1st Cir.1986). Thus, the Government could continue to evade constitutional review of their actions simply by entering into temporary occupancy agreements with residents after the seizures and evictions of their homes had already occurred.

This issue also satisfies the second prong of the "capable of repetition yet evading review" test because it presents an important issue of public interest. Clearly, an intrusion of the Government into the home of a citizen, whether it is paid for with public funds in the form of a government subsidy, rented, or privately owned, presents a compelling issue of substantial interest to the public. *See, U.S. v. Certain Lots in Virginia Beach*, 657 F.Supp. 1062 (E.D.Va.1987). Thus, the due process issues, which have been raised by Juide's motion, fall within the parameters of the general exception to mootness.

The final, and most compelling, reason why this issue is not moot is found in *United States v. Premises and Real Property Located at 4492 South Livonia Road*, 889 F.2d 1258 (2d Cir.1989); *reh. den.* 897 F.2d 659 (2d Cir.1990), in which the claimant argued that the seizure of his home without prior notice or hearing violated his rights to due process of law. The Second Circuit Court of Appeals concluded that the mere fact that the Government had entered into an occupancy agreement with the claimant did not "undo the constitutional harm [that had occurred since it] allowed

continued occupancy as a matter of grace, not entitlement." *Id.* at 1265.

## III.

■ The question of whether pre-seizure notice and a hearing is required before the forfeiture of a leasehold interest is one of first impression in this Circuit.[5] However, the Second Circuit, as well as courts in other circuits, have addressed and resolved this issue in favor of the claimants. *See Livonia Rd.*, 889 F.2d 1258; *Application of Kingsley*, 802 F.2d 571 (1st Cir.1986); *Richmond Tenants Organization, Inc. v. Jack Kemp, Secretary of Housing and Urban Development, et al.*, No. 3:90 CV 00346 (E.D.Va. filed June 22, 1990).[6]

In *Livonia Rd.*, the Second Circuit Court of Appeals held that the seizure of a home under 21 U.S.C. section 881(a)(7) violated the claimant's right to due process when the home was seized without first providing the occupant with notice and an adversary hearing, absent exigent circumstances that would justify a prehearing seizure. In reaching this conclusion, the court in *Livonia Road* relied upon the line of Supreme Court cases which addresses the rights of claimants in civil forfeiture proceedings. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); and *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

In *Fuentes*, the Supreme Court held that the Government must show three criteria in civil forfeiture actions to establish that an extraordinary situation existed which would justify the denial of a pre-seizure hearing: 1) the seizure was necessary to secure an important governmental interest; 2) there was a special need for prompt action; and 3) the State has kept strict

---

4. *See* June 8, 1990 letter from U.S. Attorney Stephen Markman to this Court.

5. It should be noted that, in contrast to the seizure of other tangible property, such as boats and cars, the seizure of leasehold interests is a relatively recent practice. In fact, it has only been since the Anti–Drug Abuse Act of 1988 was

enacted, which amended Section 881(a)(7), that forfeiture of leaseholds has occurred.

6. The Court enjoined the Defendants "from evicting, without prior notice and an opportunity to be heard, household members of public housing units whose leaseholds have been seized by the Government." Order at 2.

control over its monopoly of legitimate force. *Id.* 407 U.S. at 91, 92 S.Ct. at 1999.

In *Livonia Road*, the Second Circuit Court of Appeals determined that only the second criterion (extraordinary circumstances) can justify the Government's failure to provide a pre-seizure hearing in the context of civil forfeiture proceedings involving a citizen's home. In those circumstances in which the facts do not show that exigent circumstances were present which would warrant the postponement of notice and hearing, the Government's interest in enforcing drug laws must be subordinated to the claimant's interest in the property. *See Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (court must balance the significance of the property interest and the risk of erroneous deprivation against the Government's interest in the procedures used.)

In weighing the due process considerations of a pre-notice, pre-hearing seizure of property, this Court is guided by the recognized doctrine that a home is subject to special constitutional protections. It is well settled that courts have traditionally drawn a distinction between personal property and a home, affording the latter far greater protection under the law. *Virginia Beach*, 657 F.Supp. at 1065, citing *South Dakota v. Opperman*, 428 U.S. 364, 367–68, 96 S.Ct. 3092, 3096–97, 49 L.Ed.2d 1000 (1976); *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961) ("At the very core [of the Fourth Amendment] stands the right of a [person] to retreat into his own home and

there be free from unreasonable governmental intrusion."); *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) ("[T]he right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security....")

Moreover, unlike other property subject to civil forfeitures, such as boats and automobiles, which could easily be moved to another jurisdiction or be concealed if pre-seizure notice were given, a home is distinctly different because it is immobile. Therefore, exigent circumstances could virtually never exist which required the seizure of a home prior to notice and a hearing. *Livonia Road*, at 1265.

■ In the instant case, the seizure of Juide's home and her eviction from it, without prior notice and a hearing, violated her constitutional rights to due process of law. Although this Court recognizes that the seizure of Juide's leasehold interest was authorized by a federal magistrate, thereby affording her *some* process of law, this was insufficient to satisfy her full rights to due process. As a leaseholder of an apartment, which is owned by the Ann Arbor Housing Commission, Juide did not have the ability to legally encumber, sell, move, or hide the property. Thus, no exigent circumstances existed which could have justified the exparte nature of the probable cause hearing.[7] Should the Government actually succeed in its forfeiture action before this Court, then and only then, may it

---

7. This Court notes that Juide resides in the premises as part of a government entitlement program, which automatically deducts rent from her ADC payments, and transfers those funds directly to the Ann Arbor Housing Commission. Thus, Juide is not an "owner" of the real property, nor is she technically an "owner" of her leasehold interest. The leaseholds of residents in public housing units are governed by Department of Housing and Urban Development (HUD) regulations, and Juide resides in her apartment subject to these regulations, as a matter of entitlement. Therefore, exigent circumstances could not have existed in this case, since Juide could not have destroyed, transferred, or hidden a leasehold interest that she does not own.

Moreover, under the civil forfeiture statute, the Government cannot act in a manner which irrevocably alters a claimant's right to their property before winning a hearing on the merits. In the instant case, the ousting of Juide from public housing is less like a seizure and more akin to an irrevocable sale or transfer of legal title to property because reversing the harm caused by the eviction would be impossible. Thus, just as the Government may not sell or transfer title to cars or boats that it has seized until after winning a judgment on the merits, the Government may not interrupt, for potentially prolonged periods of time, a public housing resident's entitlement to occupancy in an apartment paid for, owned, and regulated by the Government, until there has been a finding on the merits, and in its favor.

replace Juide as the occupier of the apartment at 850 South Maple Road.

■ The Government argues that exigent circumstances existed to support the pre-notice seizure of Juide's apartment. According to the Government, seizure was necessary because of the likelihood that drug activity would continue on the premises unless there was a prompt and immediate seizure. More specifically, the Government states that (1) a pre-seizure hearing would have frustrated its interest because drug conveyances are mobile and easily concealed, and (2) if a hearing were held, it would allow the owners or occupants of the apartment to move or conceal their drug trafficking activities. However, neither of these reasons satisfies the exigent circumstances requirement of *Fuentes.*

In *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court extended the *Fuentes* holding to drug forfeiture cases. In *Calero–Toledo,* the Supreme Court allowed the postponement of notice and an opportunity for hearing until after the seizure of property because of the "special need for very prompt action" as required by *Fuentes.* However, the Court focused on the fact that the *res* in *Calero–Toledo* (a yacht) could easily have been removed to another jurisdiction, destroyed, or concealed if pre-seizure notice were given. The Supreme Court did not make any mention of the possibility of continued drug transactions on the yacht as one of the factors which constituted exigent circumstances.

Moreover, the purpose of civil forfeiture proceedings is to seize the property which facilitates drug transactions, and not primarily to stop the consumption or sale of drugs by people using the property. Criminal proceedings must be brought in order to restrain people from engaging in drug transactions. In the instant case, no criminal action has been brought against Juide. In fact, the Government's decision to enter into a temporary occupancy agreement with Juide belies its argument that the property would continue to be used for drug transactions, which, in turn, would constitute an exigent circumstance.

Finally, a showing of exigent circumstances would be highly unusual when a citizen's home is at stake. Indeed, any exigency that might be posed by the threat of an encumbrance being placed upon a home or the transfer of title could be avoided by less restrictive means, such as obtaining a restraining order or requiring the posting of a bond. *Livonia Rd,* 889 F.2d at 1265. In the instant case, where only a leasehold interest is held in the property, the potential for exigent circumstances is even more unlikely given that the title to the property does not belong to Juide, and preseizure notice and hearing would not frustrate the statutory purpose of section 881(a)(7).[8]

Therefore, this Court concludes that 1) Juide's due process rights were violated when the federal magistrate issued the warrant for seizure prior to holding a hearing in which she could appear and challenge the Government's position that probable cause existed; 2) the Government improperly evicted Juide from the premises; and 3) the warrant which had been issued by the magistrate must be vacated, and any evidence seized as a result of the warrant must be deemed to be inadmissible in any forfeiture hearing. Accordingly, this Court concludes that Juide occupies the property (i.e., the apartment at 850 South Maple in Ann Arbor) as a matter of right pending the resolution of this civil action.

## IV.

■ Juide has filed a Motion to Strike Portions of the Complaint because, accord-

8. The Senate Report on the proposed Comprehensive Crime Control Act of 1984 makes clear the purpose of the forfeiture provision: "Under current law, if a person uses a boat or car to manufacture dangerous drugs, his use of the property renders it subject to civil forfeiture. But if he uses a secluded barn to store tons of marihuana or uses his house as a manufacturing laboratory for amphetamines, there is no provision to subject his real property to civil forfeiture, even though its use was indispensable to the commission of a major drug offense…. S.Rep. No. 225, 98th Cong., 1st Sess. 195, reprinted in 1984 U.S.Code Cong. & Ad. News 3182, 3378.

ing to her, only two subparagraphs allege facts that are pertinent to the Government's claim. She contends that the remaining paragraphs only make references to the drug epidemic generally and the specific criminal activities that had taken place in locations other than her apartment.[9]

Paragraph 13 of the Complaint incorporates by reference the police officers' affidavit which was presented to the magistrate in support of their application for a seizure warrant. A large portion of the affidavit contains information regarding alleged drug transactions that occurred at locations other than Juide's apartment. Subparagraphs (a)–(k) of Paragraph 14 repeat verbatim the allegations which were set forth in the affidavit.

The law is clear that allegations of prior criminal investigations in a civil action are immaterial, impertinent and highly prejudicial, and therefore, must be stricken from the Complaint. *See State of Minnesota v. United States Steel Corp.*, 44 F.R.D. 559 (D.Minn.1968) (portions of complaint referring to criminal investigation of defendant stricken as improper); *Mitchell v. Bendix Corp.*, 603 F.Supp. 920 (N.D.Ind.1985) (reference to prior state administrative investigation struck as irrelevant).

In the instant case, the Government is proceeding solely against the property, and not Juide. Therefore, allegations which speak of drug activity at locations other than 850 South Maple Road in Ann Arbor are irrelevant to this action. Moreover, the statements in paragraphs 13 and 14(a)–(k) are extremely prejudicial to Juide, in that they allege a pattern of criminal activity in another apartment that she had previously occupied. Juide has not been convicted of any crimes relating to her occupancy of other units. Even if she had been convicted, this fact would still be irrelevant to the present action.

Thus, this Court concludes that subparagraphs 13 and 14(a)–(k) of the Complaint should be stricken on grounds that they are irrelevant to the cause of action, and prejudicial to Juide.

## V.

■ Civil forfeitures under Section 881 are governed by the Supplemental Rules for Admiralty and Maritime claims. Supplemental Rule E(2)(a) requires that

> ... the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

In *U.S. v. Certain Real Property Located at 2323 Charms Road, Milford Township*, 726 F.Supp. 164 (E.D.Mich.1989) Judge Cohn, of this District, interpreted the pleading requirements for a civil forfeiture complaint under Section 881 and stated that the complaint must provide sufficiently specific facts to support a reasonable inference that the Government has a valid claim to the seized property. *U.S. v. Certain Real Property Located at 2323 Charms Road, Milford Township*, 726 F.Supp. 164 (E.D.Mich.1989). In addition, " 'a section 881 forfeiture complaint must allege facts sufficient to support a reasonable belief that the [G]overnment could demonstrate probable cause [in the actual forfeiture proceeding].' " *Id.*, citing *U.S. v. Property Known as 6 Patricia Drive*, 705 F.Supp. 710, 716 (D.R.I.1989).

The Sixth Circuit Court of Appeals has not addressed the specific issue of pleading requirements in a section 881 civil forfeiture action. However, the issue was addressed in *Livonia Road*, 889 F.2d 1258, wherein the claimant challenged the complaint on the ground that it contained only conclusory allegations which tracked the statutory language of section 881(a)(7) without setting forth any underlying facts in support of probable cause for the seizure of property. *Id.* at 1266. While noting that "the particularity requirements of Supplemental Rule E(2) is a substantial question," the Second Circuit Court of Ap-

---

**9.** The Government has agreed to strike paragraphs 5, 6, 7, 8, 9, 12, and portions of 15 from the Complaint, but did not agree to striking paragraphs 13 and 14(a)–(k).

peals found that "it is unlikely that the claimant to a home alleged to have been used to facilitate drug offenses is without a reasonable starting point from which to begin an investigation." *Id.* In addition, the Court held that "in determining the sufficiency of a complaint under Rule E(2)(a), courts have examined supporting affidavits to determine whether they cure a lack of particularity in the complaint itself." *Id.,* citing *United States v. Pole No. 3172,* 852 F.2d 636, 639–40 (1st Cir.1988).

In her Motion to Dismiss, Juide contends that the Complaint fails to show (1) a substantial connection between the leasehold interest and the alleged drug transactions, or (2) any personal involvement by her in the two undercover drug sales which occurred in the seized apartment. Since the Government is specifically proceeding against the leasehold interest and not the real property, Juide claims that the Complaint must allege some connection between the leaseholder and drug transactions. In response, the Government contends that the general pleading requirements of the Supplemental Rules for Admiralty and Maritime Claims under E(2)(a) have been satisfied, in that the Complaint details the time and place of the alleged cocaine transactions, the identity of the parties, the money paid for the drugs, and the items seized pursuant to a search warrant.

In order to grant the relief which Juide seeks to obtain in the instant motion, this Court must find that the Complaint fails to link the leasehold interest to any drug transactions, to the extent that probable cause could not have been found. Here, a finding of probable cause must come from one of the three allegations that drug transactions occurred, and drugs were found, at the 850 South Maple Rd. address. Subparagraphs 14(1) and (m) allege that an unidentified police informer and another man engaged in two drug transactions while they were inside Juide's apartment. Subparagraph (m) also contains an allegation that two containers of cocaine were found in her apartment as the result of a search by local police. The Government correctly notes that this is a civil action against her property, and not against Juide.

Contrary to the assertions by Juide, this Court finds that the Complaint does meet the minimal pleading requirements of Supplemental Rule E(2)(a). The affidavit, which reports the sale of cocaine to an unidentified police informant on two separate occasions, is adequate to support the Government's claim. In addition, the seizure of two containers of cocaine from the apartment also helps to establish probable cause for the seizure, by showing a nexus between the apartment and drug transactions. Hearsay statements within affidavits can establish probable cause in a forfeiture proceeding. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. One 1975 Mercedes 280S,* 590 F.2d 196 (6th Cir.1978). Accordingly, this Court will deny Juide's Motion to Dismiss.

### VI.

■ Juide has moved for a preliminary injunction in an effort to restrain the Government from making any further public statements about this case. In addition, she seeks sanctions under Federal Rule of Civil Procedure 11, based upon her contention that the Government 1) gave advance notice to the news media of the seizure of her home, 2) issued press releases and conducted press conferences during the course of settlement negotiations with her, 3) filed a Complaint which contained improper references to her alleged past conduct, and other extraneous matters, and 4) provided the media with copies of the Complaint. In response, the Government correctly argues that sanctions are not appropriate since Rule 11 only applies to signed papers but not to its representatives' claimed misdeeds.

Assuming Juide's contentions to be absolutely correct, this Court cannot impose sanctions upon the Government given the limited scope of Rule 11 to written and signed documents. However, this Court will restrain the Government, its agents,

employees and any other persons who are associated directly or indirectly with the prosecution of this case, from making public statements about this particular case. This Court does not have the authority to order the Government to refrain from holding press conferences, or making general comments to the media, concerning its efforts in fighting the "war on drugs."

## VII.

Juide has requested this Court to enter a protective order which would limit the scope of discovery to those matters that occurred at 850 South Maple Road on March 8 and April 5, 1990, the dates during which two alleged drug purchases and a search of the premises, occurred. In support of this Motion, she claims that 1) most of the interrogatories seek information about her past conduct or about people with no connection to the property at 850 South Maple Road, 2) her personal safety could be jeopardized by responding to all of the Government's questions, and 3) the Government is using civil discovery rules as a tool to conduct a criminal investigation into drug trafficking at the South Maple public housing complex.

In response, the Government states that Juide is attempting to circumvent the "normal course of civil litigation" by requesting a preliminary protective order before the start of discovery. Moreover, it contends that Juide will be able to invoke the Fifth Amendment privilege against self-incrimination without a protective order from this Court.

This Court notes that significant portions of the Complaint have been stricken, and that the Government's ability to compel answers to many of its contested interrogatories may be limited according to the revised scope of the Complaint. Juide's motion is, at best, premature and, hence, it must be denied.

## VIII.

Juide has filed a motion, seeking a stay pending a grant of immunity or the disposition of all possible criminal charges against her. The Government has not filed a response to this motion.

■ In *United States v. U.S. Currency*, 626 F.2d 11 (6th Cir.1980), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980), a civil forfeiture complaint was filed under 18 U.S.C. section 1955 after the FBI raided a gambling establishment. The Government alleged that the items, which were seized in the raid, had been used in an illegal gambling business. The trial court dismissed the complaint on Fifth Amendment grounds. The Sixth Circuit Court of Appeals reversed, holding that (1) the dismissal was premature, and (2) the district court could have stayed the proceedings pending the outcome of the criminal action, or a guarantee from the Government that the claimants would not be prosecuted. *Id.* at 17.

This holding is consistent with the idea that "a prosecutor may not circumvent a person's privilege against self-incrimination by invoking a civil remedy to enforce a criminal statute," *Childs v. McCord*, 420 F.Supp. 428, 433 (D.Md.1976), *aff'd*, 556 F.2d 1178 (4th Cir.1977). In civil forfeiture proceedings, the burden of proof shifts from the Government to the claimant once probable cause has been shown. Under these circumstances, the claimants are put in the position of having to choose between "incriminating themselves, or, of failing to file an answer ... to the [G]overnment's complaint" unless granted immunity from criminal prosecution. *U.S. Currency*, 626 F.2d at 15.

Accordingly, this Court has the authority to stay the proceedings if either the state or federal government does not grant immunity to a claimant from criminal prosecution. Therefore, since the federal government has only granted use immunity to Juide, and no grants of immunity have been provided by state or local officials, this Court will enter a stay of proceedings in this case until such time as (1) Juide is given full immunity from state or federal criminal prosecution, or (2) a final adjudication of any criminal action for offenses

arising out of her use of the 850 South Maple property has been rendered.

IT IS SO ORDERED.